**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| WILLIAM REED, DONNA REED, BONNIE YOUMANS, JANE YATES, and PHILLIP CAULDER, *all individually and for the benefit and on behalf of all others similarly situated*, | ) ) ) ) ) ) | |
| | ) | No. 2:14-cv-1583-DCN |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| | ) | **ORDER** |
| BIG WATER RESORT, LLC; TLC HOLDINGS, LLC; RICHARD CLARK; JAMES THIGPEN; JIMMY "STEVE" LOVELL; and OCOEE, LLC, | ) ) ) ) ) | |
| Defendants. | ) ) | |
| BIG WATER RESORT, LLC; TLC HOLDINGS, LLC; RICHARD CLARK; JAMES THIGPEN; JIMMY "STEVE" LOVELL; and OCOEE, LLC, | ) ) ) ) | |
| Third-Party Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| M.B. HUTSON, a/k/a M.B. HUDSON, | ) ) ) | |
| Third-Party Defendant. | ) ) | |

This matter is before the court on United States Magistrate Judge Mary Gordon Baker's Report and Recommendation ("R&R") that this court deny plaintiffs' motion to certify class. Plaintiffs and defendants filed written objections to the R&R. For the reasons set forth below, the court adopts in part and denies in part the R&R and denies plaintiffs' motion to certify class without prejudice. The parties have 90 days to engage in discovery limited to the statute of limitations issue. At the end of discovery, if

1

appropriate, plaintiffs may re-file their motion to certify class under Federal Rule of Civil Procedure 23(b)(3).

## I.  BACKGROUND

Plaintiffs all purchased memberships in the club known as "Big Water Resort." Am. Compl. ¶¶ 13–15, 40, 41.  Plaintiffs allege that "Big Water Resort" was "held out" by defendants Big Water Resort, LLC ("the LLC"); Richard Clark ("Clark"); James Thigpen ("Thigpen"); Jimmy "Steve" Lovell ("Lovell"); and TLC Holdings, LLC ("TLC") "as a private club where members (including [p]laintiffs and all class members) would have guaranteed exclusive access to certain property located in Clarendon County known as the Big Water Resort and owned by [TLC]."  Id. ¶ 14.  According to plaintiffs, defendants "were an amalgamation working together in order to se[ll] memberships in the Big Water Resort."  Id. ¶ 18.  "Defendants Thigpen, Lovell and Clark, at all times relevant, were members of both entities, the management of the entities overlapped, the entities were located at the same property, and these [d]efendants held joint meetings to conduct business, and monies flowed freely between them to aid in the purpose of their joint business."  Id.

Plaintiffs allege that they and all class members purchased memberships in the Big Water Resort for approximately $8,400.00 per membership" and "were promised that they would have a membership in a private club operated at the Big Water Resort . . . for their lifetime plus the life of one survivor.  Id. ¶¶ 22–23.  Plaintiffs further allege that the membership contract promised "that the club would be members only" and that members "would have access to the land owned by [TLC] for the lives of each member and their survivor."  Id. ¶¶ 25–26.

Plaintiffs complain that the LLC "breached contracts with Plaintiffs and all class members by converting from a private club to a public facility and/or by ceasing operations." Id. ¶ 27. According to plaintiffs, the conversion of the LLC "from a private club to a public facility and [the] ceasing of its operations damaged [them] and all class members because the exclusive rights they bargained for have been rendered worthless." Id. ¶ 28. Plaintiffs allege that defendants "caused [the LLC] to breach its contract with its members . . . by transferring [the LLC] to [t]hird [p]arty [d]efendant M.B. Hutson." Id. ¶ 38. Specifically, plaintiffs maintain that at the the time of this transfer: (1) the LLC was insolvent; (2) Hutson did not have the financial ability to continue its operations; and (3) there was no long-term contract between TLC and the LLC to ensure that members would have continued access to Big Water Resort. Id. ¶¶ 36, 38, 82. According to plaintiffs, following this transfer, Big Water Resort became a public facility and the LLC ceased operations. Id. ¶¶ 28, 82.

Plaintiffs, taking issue with the state of their memberships, filed suit in this court on April 22, 2014. In their amended complaint, plaintiffs allege the following causes of action: (1) declaratory and injunctive relief; (2) breach of contract; (3) tortious interference with contract; (4) fraudulent conveyance; (5) violation of time share statutes; (6) negligence per se; (7) negligence; (8) negligent misrepresentation; and (9) piercing the corporate veil.[1]

On January 1, 2015, plaintiffs filed a motion to certify class, seeking class certification of all of their claims, other than their claim for negligent misrepresentation. Defendants filed a response on March 13, 2015, to which plaintiffs replied on April 15,

_____

[1] This court dismissed plaintiff's claims for violation of time share statutes and negligence per se on February 10, 2015. ECF No. 86.

2015. The magistrate judge issued an R&R on August 3, 2015, denying class certification under Rule 23(b)(2) and Rule 23(b)(3). Plaintiffs and defendants filed objections to the R&R on August 20, 2015. The matter has been fully briefed and is now ripe for the court's review.

## II. LEGAL STANDARD

### A.     Objections to R&R

This court is charged with conducting a de novo review of any portion of the magistrate judge's R&R to which specific, written objections are made. 28 U.S.C. § 636(b)(1). A party's failure to object is accepted as agreement with the conclusions of the magistrate judge. See Thomas v. Arn, 474 U.S. 140, 149–50 (1985). In absence of a timely filed objection to a magistrate judge's R&R, this court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (citing Fed. R. Civ. P. 72 advisory committee's note). The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination rests with this court. Mathews v. Weber, 423 U.S. 261, 270–71 (1976). This court may accept, reject, or modify the report of the magistrate judge, in whole or in part, or may recommit the matter to him with instructions for further consideration. 28 U.S.C. § 636(b)(1).

### B.     Class Certification

Under Federal Rule of Civil Procedure 23, to certify a class action, the class must meet the four Rule 23(a) prerequisites and fit within one of the three Rule 23(b) categories. Id. Plaintiffs seek certification under Rule 23(b)(3). "[D]istrict courts have

wide discretion in deciding whether or not to certify a class . . . ."  Gunnells v. Healthplan

Servs., Inc., 348 F.3d 417, 424 (4th Cir. 2003) (citation omitted).

### III.  DISCUSSION

Both parties object to the R&R.  Plaintiffs argue that the magistrate judge erred

in:  (1) denying plaintiffs' motion for class certification; (2) "finding that common issues

do not predominate solely because of a potential statute of limitations defense"; and (3)

"finding that while the damages model presented is reliable on a class-wide basis[,] it is

inappropriate because it omits too many relevant considerations to be a viable method."

Pls.' Objections 2.  Defendants argue that the magistrate judge erred in finding that:  (1)

plaintiffs' proposed class is ascertainable; and (2) plaintiffs complied with Federal Rule

of Civil Procedure 23(a).  Defs.' Objections 2.

In keeping with the structure in the R&R, the court will address defendants'

objections concerning class ascertainability and Rule 23(a) before turning to plaintiffs'

objections concerning Rule 23(b).

### A.    Class Ascertainability

Defendants first argue that the magistrate judge erred in failing to deny plaintiffs'

motion based on the lack of an ascertainable class.  Defs.' Objections 2.  "As a

preliminary matter, the court should consider the definition of the class when determining

the appropriateness of class certification."  Cuming v. S.C. Lottery Comm'n, No. 3:05-

cv-3608, 2008 WL 906705, at *1 (D.S.C. Mar. 31, 2008) (citing Kirkman v. N.C.R.R.

Co., 220 F.R.D. 49, 53 (M.D.N.C. 2004)).  Rule 23 contains an implicit threshold

requirement that the members of a proposed class be "readily identifiable."  Hammond v.

Powell, 462 F.2d 1053, 1055 (4th Cir. 1972).  If a class description is not "sufficiently

definite so that it is administratively feasible for the court to determine whether a

particular individual is a member," a class should not be certified. <u>Cuming</u>, 2008 WL

906705, at *1. "The proposed class definition must not depend on subjective criteria or

the merits of the case or require an extensive factual inquiry to determine who is a class

member." <u>Id.</u> (citing <u>In re Copper Antitrust Litig.</u>, 196 F.R.D. 348, 353 (W.D. Wis.

2000)). "Where the practical issue of identifying class members is overly problematic,

the court should consider that the administrative burdens of certification may outweigh

the efficiencies expected in a class action." <u>Id.</u> (citing <u>Sanneman v. Chrysler Corp.</u>, 191

F.R.D. 441, 445 (E.D. Pa. 2000)).

> Plaintiffs propose the following class definition:

> All persons who entered into membership agreements with Big Water
> Resort, LLC, that contained paragraph "3. Use Privileges" with the
> following language: Member usage is subject to space availability on a
> first come first served basis among all Members, and whose membership
> had not expired or been cancelled on August 19, 2011.

Pls.' Reply to Mot. to Certify 13. "Excluded from the class are the [d]efendants, any

entity in which a [d]efendant has or had a controlling interest, and their legal

representatives, agents, affiliates, heirs and successors and any interests or assigns of any

excluded party." Pls.' Mot. to Certify 11.

Defendants argue that the proposed class is not ascertainable because plaintiffs

have failed to provide any objective criteria for determining class membership that does

not require an individualized inquiry. Defs.' Objections 3. In support of their argument,

they rely on <u>Karhu v. Vital Pharm., Inc.</u>, in which the Eleventh Circuit Court of Appeals

adopted "a strict ascertainability requirement." 2015 WL 3560722, at *4 (11th Cir. June

9, 2015). Specifically, the <u>Karhu</u> court found that ascertainability required that "the class

6

definition contain[] objective criteria that allow[s] for class members to be identified in an administratively feasible way.  Identifying class members is administratively feasible when it is a 'manageable process that does not require much, if any, individual inquiry.'" Id. at *1 (quoting Bussey v. Macon Cnty. Greyhound Park, Inc., 562 F. App'x. 782, 787 (11th Cir. 2014) (internal quotation marks omitted)).  Karhu involved a proposed class of purchasers of a dietary supplement called Meltdown—plaintiff alleged that Meltdown's advertising was false.  Id.  The plaintiff proposed identifying class members using defendant's sales data and through the affidavits of Meltdown purchasers.  Id. at *2–*4. The court found neither method to be administratively feasible, noting that plaintiff failed to explain how either one would "aid class-member identification."  Id. at *4.

Courts in this circuit have similarly found that identifying class members is not administratively feasible where an extensive individualized factual inquiry is required. For example, in Cuming, plaintiffs brought a class action against the state lottery commission, alleging that it misled them into purchasing instant-win lottery tickets by advertising "top prizes" when those prizes had already been awarded.  2008 WL 906705, at *1–*2.  The proposed class included consumers who purchased tickets "offering a chance to win top prizes that at the time of sale were no longer available."  Id. at *2.  The court found that such a class was not ascertainable, noting that "the court would have to conduct potentially thousands of individualized inquiries to determine whether the ticket had been purchased after the top prize had been awarded.  This is exactly the type of 'extensive factual inquiry' that courts have held to be too administratively burdensome to warrant class certification."  Id. at *3.

Likewise, in <u>Solo v. Bausch & Lomb Inc.</u>, this court found that it would be administratively unfeasible to determine plaintiffs' class membership because the court "would have to make thousands of fact-intensive inquiries." No. 2:06-cv-02716, 2009 WL 4287706, at *6 (D.S.C. Sept. 25, 2009). The <u>Solo</u> plaintiffs proposed two classes consisting of purchasers of an allegedly defective contact lens solution that was ultimately recalled. <u>Id.</u> at *1–*2. The classes defined its members as those who purchased the product, "other than for resale," during a certain time period, and "who lack[ed] reimbursement for any quantity discarded following [the recall]." <u>Id.</u> at *2–*3. In rejecting this definition, the court noted that it "would need to consider numerous individualized factual scenarios to determine class membership," and commented on the "potential class membership quagmire it would be obliged to enter should it certify the class." <u>Id.</u> at *6.

Here, as noted by the magistrate judge, "[a]scertaining the members of the proposed class is not [] quite as easy as [p]laintiffs contend." R&R 6. The record indicates that there is at least one identified class member whose membership expired prior to August 19, 2011 and that a handful of the memberships in existence after August 19, 2011 do not contain the "use" provision at issue. <u>See</u> Pls.' Mot. to Certify Supp. Ex. 1 (indicating that member 492 paid for a five year membership on July 30, 2005); Defs.' Resp. Ex. 3 (listing four memberships sold by Hutson that were valid after August 19, 2011 and appear to contain different usage terms). Accordingly, the court agrees with the magistrate judge that "determining whether an individual is a class member will require at least some inquiry into (a) whether the contract at issue had the 'use' provision, and (b) whether the contract had expired or been cancelled on August 19, 2011." R&R 6.

8

However, identifying this class will not require the court to "make <u>thousands</u> of fact-intensive inquires"—plaintiffs proposed class consists of between 257 and 750 members. <u>Solo</u>, 2009 WL 4287706, at *6; <u>see also</u> <u>Cuming</u>, 2008 WL 906705, at *3; Pls.' Mot. to Certify 22. Further, there is no indication that making these inquiries is an impossible task. <u>Cf.</u> <u>EQT Prod. Co. v. Adair</u>, 764 F.3d 347, 358 (4th Cir. 2014) ("If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." (quoting <u>Marcus v. BMW of N. Am., LLC</u>, 687 F.3d 583, 593 (3d Cir. 2012))). Indeed, the record indicates that the overwhelming majority of membership agreements contain the "use" provision, making a review of such contracts fairly simple. <u>Cf.</u> <u>Solo</u>, 2009 WL 4287706, at *6 (finding that "determining which consumers fall into which categories would be virtually impossible"); <u>see e.g.,</u> <u>Fisher v. Va. Elec. & Power Co.</u>, 217 F.R.D. 201, 216–17 (E.D. Va. 2003) (granting certification when the easements at issue were "the product of a limited set of substantially similar conveyances," so that "determining the relevant property interest [would] require analysis of only a limited array of easement language and the vast majority of conveyances at issue contain[ed] substantially similar language"). The court therefore finds that plaintiffs' class description is "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." <u>Cuming</u>, 2008 WL 906705, at *1. Accordingly, plaintiffs' proposed class is ascertainable.

**B.      Rule 23(a)**

Defendants next argue that the magistrate judge erred in finding that plaintiffs' proposed class meets the requirements of Federal Rule of Civil Procedure 23(a).

9

Defendants' Objections 4–6.  Under Rule 23(a), class certification is appropriate if:  (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

### 1.    Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  "There is no mechanical test for determining whether in a particular case the requirement of numerosity has been satisfied."  Kelley v. Norfolk & W. Ry. Co., 584 F.2d 34, 35 (4th Cir. 1978).  "The issue is one primarily for the District Court, to be resolved in light of the facts and circumstances of the particular case."  Id.  The Fourth Circuit has found that a class with 46 to 60 members satisfies the numerosity requirement.  Holsey v. Armour & Co., 743 F.2d 199, 217 (4th Cir. 1984).  Here, the proposed class consists of between 257 and 720 members[2]—a number that easily meets Rule 23(a)'s numerosity requirement.  See, e.g., Cent. Wesleyan Coll. v. W.R. Grace & Co., 6 F.3d 177, 183 (4th Cir. 1993) (noting the district court's determination that 480 potential class members would satisfy the numerosity requirement); Brown v. Charles Schwab & Co., No. 207-cv-03852, 2009 WL 4809426, at *4 (D.S.C. Dec. 9, 2009), amended by 2010 WL 424031 (D.S.C. Feb. 1, 2010) (finding a potential class "of at least fifty-three members" to be "within the range of class sizes the Fourth Circuit has deemed sufficiently numerous"); Thomas v. Louisiana–Pacific Corp., 246 F.R.D. 505, 509 (D.S.C. 2007) (approving a class action with approximately 130 potential plaintiffs).

---

[2] According to plaintiffs, there were 720 active members when Hutson bought Big Water Resort, and there are 257 active members today.  Pls.' Mot. to Certify 22.

Defendants' arguments to the contrary merely rehash defendants' belief that the class is not ascertainable and are unavailing.  <u>See</u> Defs.' Objections 4.

### 2.    Common Questions of Law or Fact

Rule 23(a)(2) requires "questions of law or fact common to the class."  "A common question is one that can be resolved for each class member in a single hearing, such as the question of whether an employer engaged in a pattern and practice of unlawful discrimination against a class of its employees."  <u>Thorn v. Jefferson-Pilot Life Ins. Co.</u>, 445 F.3d 311, 319 (4th Cir. 2006) (citing Charles A. Wright et al., <u>Federal Practice and Procedure</u> § 1763 (3d ed. 2005)).  Conversely, a question is not common if its resolution "'turns on a consideration of the individual circumstances of each class member.'"  <u>Id.</u> (quoting Wright, <u>Federal Practice and Procedure</u> § 1763).  To satisfy the commonality requirement, the plaintiff must "demonstrate that the class members have suffered the same injury," and that the "claim[] depend[s] upon a common contention . . . that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  <u>Wal-Mart Stores, Inc. v. Dukes</u>, 131 S. Ct. 2541, 2551 (2011) (internal quotation marks omitted) (citation omitted).  It is not enough that the class members raise common questions; these common questions must also have the capacity "to generate common <u>answers</u> apt to drive the resolution of the litigation."  <u>Id.</u> at 2551.

Defendants contend that the "myriad of very real factual differences regarding the members of the proposed class" defeat commonality under Rule 23(a).  Defs.' Objections 4.  Here, they refer mainly to differences that the magistrate judge addressed under her discussion of Rule 23(b)(3)—specifically, the application of the statute of limitations and

plaintiffs' proposed damages model.  Id. at 4–5.  Defendants also object to the magistrate judge's reliance on the "use privileges" provision of the membership agreements to find that "one common question is whether the contracts at issue promised a private club or not."  R&R 13.  Defendants have submitted four membership agreements that Hutson sold that did not contain the "use privileges" clause and contend that these contracts indicate that "there can be no commonality under Rule 23(a)."  Defs.' Objections 5.

Contrary to defendants' assertion, the holders of the membership agreements they submitted are not part of the proposed class.  See Pls.' Mot. to Certify Supp. Ex. A. Indeed, the class definition offered by plaintiffs necessarily excludes those contracts that omit the "use privileges" provision.  While the court acknowledges that the class definition presents some initial inquiry as to whether a membership contract contains the requisite "use privileges" provision, for reasons stated above, the court concludes that the class is sufficiently ascertainable, consisting of only those membership holders whose agreement contains the pertinent provision.  Thus, the court finds no error in the magistrate judge's conclusion that a common question here is whether the "use privileges" provision of the membership agreements promised a private club.  Because the "use privileges" provision is the same for all relevant membership agreements, this common question should generate a common answer.  The court therefore finds that plaintiffs have met the commonality requirement under Rule 23(a).  See Dukes, 131 S. Ct. at 2551.[3]

---

[3] Defendants' remaining objections necessarily involve the magistrate judge's predominance analysis. Accordingly, the court will address them in its predominance analysis below.

### 3.    Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties" be "typical of the claims or defenses of the class."  "The typicality requirement is met if a plaintiff's 'claim arises from the same event or course of conduct that gives rise to the claims of other class members and is based on the same legal theory.'"  Parker v. Asbestos Processing, LLC, No. 0:11-cv-01800, 2015 WL 127930, at *7 (D.S.C. Jan. 8, 2015) (quoting Comer v. Life Ins. Co. of Ala., No. 0:08-cv-228, 2010 WL 233857, at *4 (D.S.C. Jan. 14, 2010)).  The essence of this requirement "is captured by the notion that 'as goes the claim of the named plaintiff, so go the claims of the class.'"  Deiter v. Microsoft Corp., 436 F.3d 461, 466 (4th Cir. 2006) (quoting Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 340 (4th Cir. 1998)).  "The typicality requirement goes to the heart of a representative parties' ability to represent a class" and "tends to merge with the commonality and adequacy-of-representation requirements."  Id.

Defendant, without citing any authority, briefly argues that the magistrate judge failed "to provide the requisite rigorous analysis of the typicality requirement."  Defs.' Objections 5.  Although the magistrate judge's analysis of Rule 23(a)(3) is not extensive, the court finds her conclusions sound.  As the magistrate judge noted, the course of conduct giving rise to the named plaintiffs' claims is the same as that of the class—that defendants improperly granted the public access to the "private" club and failed to guarantee members the exclusive lifetime use of the club.  R&R 9; Am. Compl. ¶¶ 36, 38, 82.  "Because the proposed class members' claims arise from the same alleged course of conduct by [defendants], the facts on which plaintiffs will rely to prove their claims will also prove the claims of the absent class members."  Brown, 2009 WL 4809426, at

13

*7 (finding typicality requirement met where the "proposed class members' claims [arose] from the same alleged course of conduct as the named plaintiffs' claims"). Therefore, the court finds the named plaintiffs' claims typical of the class as a whole.

### 4.    Adequacy of Representative Parties

Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class."  "This inquiry involves two issues:  (i) whether plaintiffs have any interest antagonistic to the rest of the class; and (ii) whether plaintiffs' counsel are qualified, experienced and generally able to conduct the proposed litigation." S.C. Nat'l Bank v. Stone, 139 F.R.D. 325, 329–30 (D.S.C. 1991) (internal quotation marks and citation omitted); see also Lloyd v. Gen. Motors Corp., 266 F.R.D. 98, 103 (D. Md. 2010) (providing similar inquiry).  "For a conflict of interest to prevent plaintiffs from meeting the requirement of Rule 23(a), that conflict 'must be fundamental.  It must go to the heart of the litigation.'"  Gunnells, 348 F.3d at 430–31 (quoting 6 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 18:14 (4th ed. 2002)).  A conflict in interest is not fundamental when all class members "share common objectives and the same factual or legal positions and have the same interest in establishing the liability of defendants."  Ward v. Dixie Nat. Life Ins. Co., 595 F.3d 164, 180 (4th Cir. 2010) (internal alterations omitted) (quoting Gunnells, 348 F.3d at 431).

Defendants argue that this requirement is not met because a "number of conflicts [exist] between the [p]laintiffs and the class."  Defs.' Objections 6.  Specifically, defendants contend that named plaintiffs Jane Yates ("Yates") and William and Donna Reed ("the Reeds") have only a "speculative claim for relief" because they "stopped going to the campground years ago" and, therefore, "cannot have been damaged by . . .

defendants."  <u>Id.</u>  They similarly assert that named plaintiff Phillip Caulder ("Caulder")

"has been in default on his [m]embership [a]greement for at least 2 years" and that his

breach of contract claim relies on a different legal theory.  <u>Id.</u>

       As the magistrate judge noted, these arguments do not indicate that a <u>fundamental</u>

conflict exists between the named plaintiffs and the other class members.  R&R 12.

Defendants' assertion that Yates and the Reeds have not suffered injury and therefore do

not share the interests of the class contradicts the testimony of these named plaintiffs.

For example, Yates testified that her interests are "equal" to the other members of the

class, and that she "would like for the people such as myself who are unhappy,

dissatisfied, feel like they have been taken advantage of to be able to collectively get

some sort of compensation."  Yates Dep. 46:14-19, 47:10-12.  Similarly, Donna Reed

stated during her deposition: "What I am looking for is for the members, the original

members that had this type of contract, for it to be fulfilled properly and executed

properly as it was proposed to us."  Donna Reed Dep. 57:3-10.

       This testimony indicates that the named plaintiffs share the common objective of

seeking a remedy for defendants' alleged unlawful conduct and that they have the same

interests as the class in establishing the liability of the defendants.  <u>See</u> <u>Bell v. Disner</u>,

2015 WL 540552, at *4 (W.D.N.C. Feb. 10, 2015) (finding that the named

representatives' interests "aligned with[] the interests of the unnamed class members

because they share[d] [a] common objective"); <u>cf.</u> <u>Audio-Video World of Wilmington,</u>

<u>Inc. v. MHI Hotels Two, Inc.</u>, 2011 WL 1059169, at *4 (E.D.N.C. Mar. 18, 2011)

(finding an "overriding conflict" where the named representatives had different remedial

preferences from potential class members as well as different "objectives, interests, and strategy" in pursuing the litigation).

As for Caulder, his breach of contract claim arises from numerous changes that occurred at Big Water Resort, <u>including</u> the fact that non-members began to use the campground.  Caulder Dep. 20:17–21:4.  Thus, the court finds that Caulder largely shares the same factual positions as the class in alleging breach of contract.  In addition, as the magistrate judge noted, Caulder's default on his maintenance fees in 2013 or 2014 "does not affect whether he was in compliance with the membership in August of 2011," the time period relevant to plaintiffs' breach of contract claim.  R&R 12.

Accordingly, the court finds that the named plaintiffs can adequately represent the proposed class.

### C.    Rule 23(b)(3)

Plaintiffs do not dispute the magistrate judge's findings related to Rule 23(a); rather, they argue that the magistrate judge erred in finding that plaintiffs' proposed class fails to meet the requirements of Rule 23(b)(3).  Pls.' Objections 2.  Rule 23(b)(3) allows a class action to be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  "The predominance requirement is similar to but 'more stringent' than the commonality requirement of Rule 23(a)."  <u>Thorn v. Jefferson-Pilot Life Ins. Co.</u>, 445 F.3d 311, 319 (4th Cir. 2006) (quoting <u>Lienhart</u>, 255 F.3d at 146 n. 4).  "Whereas commonality requires little more than the presence of common questions of law and fact, Rule 23(b)(3) requires that 'questions of law or fact

16

common to the members of the class predominate over any questions affecting only individual members.'" Id. (quoting Fed. R. Civ. P. 23(b)(3)) (internal citation omitted). The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem, 521 U.S. at 623 (citation omitted). The superiority inquiry tests whether a class action is "superior to other methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

Plaintiffs argue that the magistrate judge's finding that common issues do not predominate in this action was improper because: (1) there are no individualized issues as to the accrual of the statute of limitations period of plaintiffs' breach of contract claim; (2) any arguable individualized statute of limitations issues do not preclude class certification; and (3) "[p]laintiffs' damages model is straightforward and viable under South Carolina law." Pls.' Objections 4, 12.

### 1.    Statute of Limitations

Under South Carolina law, "a breach of contract action accrues not on the date of the breach, but rather on the date the aggrieved party either discovered the breach, or could or should have discovered the breach through the exercise of reasonable diligence."[4] Farley v. CSX Transp., Inc., 144 F. App'x 962, 963 (4th Cir. 2005) (quoting Maher v. Tietex Corp., 500 S.E.2d 204, 207 (S.C. Ct. App. 1998)). A breach of contract claim must be brought within three years from the date the action accrued. See S.C. Code Ann. § 15-3-530.

---

[4] This is a diversity action and, therefore, South Carolina law governs the applicable statute of limitations for plaintiffs' breach of contract claim. See Brown v. Am. Broad. Co., 704 F.2d 1296, 1299 (4th Cir. 1983) (citing Ragan v. Merchants Transfer and Warehouse Co., 337 U.S. 530 (1949)).

Plaintiffs assert that their breach of contract claim concerns "the outright conversion of the campground to a public campground" and that this conversion took place "sometime between August 19, 2011 and April 1, 2014." Pls.' Objections 4. Therefore, plaintiffs argue that they filed the action on April 22, 2014, "well within" the three year statute of limitations. Id. at 3. Plaintiffs contend that the campground was still considered a private club as of August 19, 2011 because of representations that Hutson made in a letter he sent "to the members" on that date. Id. This letter states in part:

> Regarding the issue of taking in the public, please let us clear this up. The same as each member use to be (public prior to becoming a member) other outsiders who express an interest are being considered. The only difference is we allow perspective new members to visit our park under trial membership which allows us the opportunity to observe that potential member for longer yearly memberships. All new members will and do pay more money for each visit for campsites and cabin sites. Existing members will always pay far less. . . .

Pls.' Mot. to Certify Ex. 23 at 1–2. According to plaintiffs, these representations provide "a strong case for equitable tolling." Pls.' Objections 7. Plaintiffs further argue that evidence of the "mere presence" of nonmembers on the campground prior to August 19, 2011 does not establish an actionable breach of the membership agreements. Id. at 4.

As an initial matter, the court finds that the magistrate judge aptly summarized the evidence indicating that some club-members knew that the public was using the campground prior to August 2011. See R&R 16–18. One of these club-members is named plaintiff Bonnie Youmans ("Youmans"). Youmans testified at her deposition that in 2008 or 2009, she noticed that nonmembers were coming to the campground from I-95 and staying for one night. Youmans Dep. 14:11–15:8. She believed that these nonmembers were not at the campground for a tour and consulted an attorney during this same time period about a possible class action. Id. at 15:16-18, 34:2-22. In addition,

Hutson testified that in early January 2011, he met with roughly 150 club-members who were upset with the state of Big Water Resort.  Hutson Dep. 58:13-24, 60:1-7.  According to Hutson, "[e]verybody had a different concern. . . . There [were] probably 100 different complaints."  Id. at 59:21–63:10.  Among these complaints was "the fact that nonmembers were coming in . . . and pay[ing] a little bit of money."  Id. at 65:16-21.  Upon review of this evidence, the court concludes that individualized inquiry is necessary to determine the merits of defendants' statute of limitations defense.

Plaintiffs contend that, even if the court were to find individualized statute of limitations issues, "the majority of [c]ourts" hold that such issues do not preclude class certification.  Pls.' Objections 4 (citing, Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 297 (1st Cir. 2000) ("Although a necessity for individualized statute-of-limitations determinations invariably weighs against class certification under Rule 23(b)(3), we reject any per se rule that treats the presence of such issues as an automatic disqualifier"); In re WorldCom, Inc. Sec. Litig., 219 F.R.D. 267, 303 (S.D.N.Y. 2003)("Although affirmative defenses such as the statute of limitations defense may be considered as one factor in the class certification calculus, the existence of even a meritorious statute of limitations defense does not necessarily defeat certification.").

Plaintiffs rely on Thorn v. Jefferson-Pilot Life Ins. Co., 445 F.3d 311 (4th Cir. 2006) to argue that the Fourth Circuit follows this trend.  Id.  In Thorn, the Fourth Circuit Court of Appeals upheld the district court's denial of class certification, in part because the availability of a statute of limitations defense presented individualized issues that could not be determined on a class-wide basis.  445 F.3d at 327.  However, the court noted that a potential statute of limitations defense was not a complete bar to class

19

certification, recognizing that the district court should "take a 'close look' at the facts relevant to the certification question." Id. (quoting Gariety v. Grant Thornton, LLP, 368 F.3d 356, 365 (4th Cir. 2004)).  The court then contemplated situations where a statute of limitations defense would not preclude class certification, including:  (1) where defendant relied on mailings that it sent to all of its insureds on a particular date to argue that the class received notice outside of the applicable statute of limitations period; and (2) where the class demonstrated that the statute of limitations defense was "so patently without merit that the district court could find that the defense was not even a real 'issue' in the case." Id. at 327 n.19.

        Neither situation articulated in Thorn is present here.  First, defendants' actions that potentially gave notice to certain class members are not susceptible to a common analysis, as would be the case with a uniform mailing.[5]  Rather, the court will have to make an individual inquiry into how each class member gained knowledge of the public's use of the campground and then determine if such knowledge provided notice of a breach of the membership agreement.  Second, the court does not find this affirmative defense to be "patently without merit."  Defendants have presented compelling evidence that at least some class members believed that Big Water Resort was converted to a public facility prior to April 22, 2011, thereby taking these members' breach of contract claims outside

_____

        [5] Although plaintiffs' argument for equitable tolling relies on a uniform mailing from Hutson, it is unclear which class members received this mailing.  Plaintiffs' brief underscores this fact when they state that "members like Mrs. Youmans would have a strong case for equitable tolling," and that her "tolling argument would be representative of any other class members with similar knowledge."  Pls.' Objections 7.  To discern which class members had "similar knowledge" would itself require an individualized inquiry.  Further, because it appears that not all class members received Hutson's letter, the court will likely have to make individualized determinations on the statute of limitations issue regardless of the applicability of equitable tolling.

of the applicable statute of limitations.[6]  Accordingly, <u>Thorn</u> does not support finding a predominance of common issues in this case.

Plaintiffs also rely on a case from this district, <u>Brooks v. GAF Materials Corp.</u>, to argue that individualized statute of limitations issues do not necessarily prevent class certification.  No. 8:11-cv-00983, 2012 WL 5195982 (D.S.C. Oct. 19, 2012) <u>clarified on denial of reconsideration</u>, 2013 WL 461468 (D.S.C. Feb. 6, 2013).  In <u>Brooks</u>, the court found that its "paramount concern . . . is not merely the number of individual inquiries that may be required, but rather whether the nature of the individual inquiries involved is so complex as to outweigh the nature of the common issues sought to be resolved by class treatment."  <u>Id.</u> at *8.  Resolving defendants' statute of limitations defense is no simple task.  At this point, the number of class members with knowledge of the public's use of the campground prior to April 22, 2011 is unknown—it is possible that the majority of the class members fall within this category.  In addition, the facts giving rise to such knowledge could differ for each class member.  Thus, the court finds that resolving defendants' statute of limitations defense is sufficiently complex that it outweighs "the nature of the common issues sought to be resolved by class treatment." <u>Id.</u>; <u>see also</u> <u>Gunnells</u>, 348 F.3d at 438 (finding that class certification was "erroneous" where the affirmative defenses were "not without merit and would require individual inquiry in at least some cases").

Accordingly, the court finds that the individualized statute of limitations issues in this case present a significant barrier to class certification under Rule 23(b)(3).

---

[6] The court makes no findings as to the merit of this defense.

### 2.    Damages

The Supreme Court held in <u>Comcast Corp. v. Behrend</u> that the respondents could not show "predominance" without presenting "another methodology" of calculating damages because "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class."  133 S. Ct. 1426, 1433 (2013).  A court in this district recently interpreted <u>Comcast</u> to mean that "the 'methodology' for measuring and quantifying damages be the same for all class members so as to satisfy the predominance requirement."  <u>Parker v. Asbestos Processing, LLC</u>, No. 0:11-cv-01800, 2015 WL 127930, at *14 (D.S.C. Jan. 8, 2015).  Notably, the Fourth Circuit has found that "Rule 23 contains no suggestion that the necessity for individual damage determinations destroys commonality, typicality, or predominance, or otherwise forecloses certification."  <u>Gunnells</u>, 348 F.3d at 428 (rejecting defense argument that individual proof of damages for class members precludes certification).  "In fact, Rule 23 explicitly envisions class actions with such individualized damage determinations."  <u>Id.</u> (citing Fed. R. Civ. P. 23 advisory committee's note to 1996 amendment) (noting that Rule 23(c)(4) permits courts to certify a class with respect to particular issues and contemplates possible class adjudication of liability issues with class members individually proving the amounts of their respective claims).

Here, plaintiffs seek damages in "the amount that each club member paid" for the membership initiation fee under the membership agreement.  Pls.' Objections 10. According to plaintiffs, paragraph 19 of the membership agreement provides:

> Member agrees to payment [of] a membership fee of $8,400.00[7] for a Deluxe Membership, together with the credit service charge ("finance charge") stated below. This membership fee ("initiation fee") is solely in consideration for belonging to BWR and having the rights to purchase, through dues payments, that resort usage and those services made available by BWR through this agreement.[8]

Pls.' Objections 10; Pls.' Supp. to Mot. to Certify Exs. 2–5. In light of this provision, plaintiffs contend that the initiation fee granted members "rights of access to a private and exclusive campground" and that defendants breached "the contractual basis upon which the membership initiation fee was solicited." Id. Plaintiffs maintain that because they do not seek to recover the annual dues and usage fees associated with their membership, their damages model takes into account the plaintiffs' use of the campground. Id.

The court agrees with plaintiffs that "no complex methodology is required" to determine the value of the initiation fee for each class member. Id. at 12. The parties have provided documentation of the initiation fee for some class members, and there is no reason to believe such information could not be obtained for the remaining class members. Therefore, the methodology for measuring damages would be the same for all class members—the court would simply need to look at the price of each class member's initiation fee. See Parker, 2015 WL 127930, at *14 (finding predominance where "the methodology for . . . actual damages . . . is the same for all class members"). Although

---

[7] The record indicates that the monetary amount for the "initiation fee" varied among the membership agreements. See Pls.' Supp. to Mot. to Certify Ex. 1 (recording initiation fees ranging from $2,000 to $8,400).

[8] The court cannot find paragraph 19 in the membership agreements cited by plaintiffs. Although the membership agreements state that the "initiation fee . . . [is] specified in paragraph 19 of this agreement," the provided agreements end after paragraph 18. Plaintiffs' provide the text of paragraph 19 in their objections. Pls.' Objections 9.

the magistrate judge found that "plaintiffs' membership is [not] completely without value," such a finding does not weigh against the methodology proposed by plaintiffs. R&R 20–21.  The court finds that plaintiffs have established a reasonable basis for damages in the amount of the initiation fees—whether plaintiffs can prove these damages is a question for the jury to decide.  S.C. Fed. Sav. Bank v. Thornton-Crosby Dev. Co., 399 S.E.2d 8, 11 (S.C. Ct. App. 1990) aff'd, 423 S.E.2d 114 (S.C. 1992) ("If the fact of damage is established, the law does not require the amount of damage to be proved with absolute mathematical certainty; damages may be recovered if there is evidence upon which a reasonable assessment of the loss can be made.").

Accordingly, plaintiffs' damages model does not preclude class certification under Rule 23(b)(3).

### 3.    Class Discovery

"[T]he weight of authority leans heavily in favor of determining class certification after further evidentiary development through discovery."  Boyce v. Wachovia Sec., LLC, 2010 WL 1253744, at *8 (E.D.N.C. Feb. 17, 2010) (citing Wright, Federal Practice and Procedure § 1785.3 (noting that "courts frequently have ruled that discovery relating to the issue whether a class action is appropriate needs to be undertaken before deciding whether to allow the action to proceed on a class basis")).

Because the court's sole hesitation in granting class certification under Rule 23(b)(3) is the presence of complex individualized statute of limitations issues, additional discovery is appropriate to determine whether these issues can be resolved by the parties. If plaintiffs are able to delineate a class that falls within the statute of limitations, then it is likely that such a class would be certified under Rule 23(b)(3).  Outside of the statute

24

of limitations issue, resolving plaintiffs' claims will likely require the court to examine evidence that is common to the class, making a class action the seemingly superior method "for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

Accordingly, the court will allow the parties 90 days to conduct discovery that is limited to the statute of limitations issue.  At the close of this discovery, if appropriate, plaintiffs may re-file their motion to certify a class under Rule 23(b)(3).

### D.    Rule 23(b)(2)

In their objections, plaintiffs assert that class certification is also appropriate under Rule 23(b)(2).  Specifically, plaintiffs state in a footnote that "[t]o the extent an independent objection to the [magistrate judge's] Rule 23(b)(2) findings is required, [p]laintiffs object to those findings and assert that Rule 23(b)(2) certification of those declaratory and injunctive issues as set forth in their [a]mended [c]omplaint are appropriate."  Pls.' Objections 2 n.1.  In their amended complaint, plaintiffs ask the court to resolve questions relating to defendants' responsibilities and plaintiffs' rights under the membership agreements.  Am. Compl. ¶ 47.  Plaintiffs also ask for "a permanent injunction preventing [TLC] from transferring or otherwise encumbering the property until all contracts with [p]laintiffs and the class are fulfilled."  Id. ¶ 48.  In their motion to certify class, plaintiffs state that their Rule 23(b)(2) claims are included "to ensure [that] the class, if successful, is not unfairly left with a judgment against a shell entity left to wither for that sole purpose."  Pls.' Mot. to Certify 28.

A putative class satisfies Rule 23(b)(2) if "[1] the party opposing the class has acted on grounds generally applicable to the class, [2] thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

The Fourth Circuit has held that Rule 23(b)(2) does not "cover cases where the primary claim is for damages, but is only applicable where the relief sought is exclusively or predominantly injunctive or declaratory." Lukenas v. Bryce's Mountain Resort, Inc., 538 F.2d 594, 595 (4th Cir. 1976) (internal quotation marks and ellipsis omitted); see also Zimmerman v. Bell, 800 F.2d 386, 389–90 (4th Cir. 1986) (holding that Rule 23(b)(2) does not apply where the proposed class seeks "essentially monetary relief," but is "limited to claims where the relief sought was primarily injunctive or declaratory"); Hunter v. Am. Gen. Life & Acc. Ins. Co., No. 301-4506-22, 2004 WL 5231631, at *10 (D.S.C. Dec. 2, 2004) aff'd and remanded, 205 F. App'x 177 (4th Cir. 2006) ("[T]his court concludes both that the relief sought on behalf of Class 2 is predominantly if not exclusively monetary and that the Fourth Circuit would not affirm certification under Rule 23(b)(2) under these circumstances."); Peoples v. Wendover Funding, Inc., 179 F.R.D. 492, 500 (D. Md. 1998) (denying class certification under Rule 23(b)(2), noting that "[a]lthough the suit does seek declaratory relief for the class as a whole, the gravamen of the complaint is a prayer for monetary relief").

Here, plaintiffs have admitted that their claims for declaratory and injunctive relief seek to facilitate a monetary judgment. Pls.' Mot. to Certify 28. At the hearing before the magistrate judge, plaintiffs expanded on their motivation, arguing that these claims seek to uncover "who [plaintiffs'] rights are against. . . . who is the contract with[,] [and] [w]ho is Big Water Resort?" Hr'g Tr. 57–58. While these may be questions common to the class, it appears that plaintiffs' primary motivation for this class action is the recovery of monetary damages. Indeed, "the gravamen of the complaint is a

prayer for monetary relief." <u>Peoples</u>, 179 F.R.D. at 500.  Accordingly, the court finds class certification inappropriate under Rule 23(b)(2).

### IV.  CONCLUSION

Based on the foregoing, the court **ADOPTS IN PART** and **DENIES IN PART** the magistrate judge's R&R and **DENIES** plaintiffs' motion to certify class without prejudice.  The parties have 90 days from the issuance of this order to engage in discovery limited to the statute of limitations issue.  At the close of discovery, if appropriate, plaintiffs may re-file their motion to certify class under Rule 23(b)(3).

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**September 21, 2015**
**Charleston, South Carolina**