**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| WILLIAM REED, DONNA REED, ) <br> BONNIE YOUMANS, JANE YATES, ) <br> PHILLIP CAULDER, *all individually* ) <br> *and for the benefit and on behalf of all* ) <br> *others similarly situated*, ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> BIG WATER RESORT, LLC; TLC ) <br> HOLDINGS, LLC; RICHARD CLARK; ) <br> JAMES THIGPEN; JIMMY "STEVE" ) <br> LOVELL; and OCOEE, LLC, ) <br> ) <br> Defendants. ) <br> _____) <br> BIG WATER RESORT, LLC; TLC ) <br> HOLDINGS, LLC; RICHARD CLARK; ) <br> JAMES THIGPEN; JIMMY "STEVE" ) <br> LOVELL; OCOEE, LLC, ) <br> ) <br> Third-Party Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> M.B. HUTSON, a/k/a M.B. HUDSON, ) <br> ) <br> Third-Party Defendant. ) <br> _____) | No. 2:14-cv-01583-DCN <br><br> **ORDER** |

This matter is before the court on the following three motions: (1) a motion for sanctions filed by third-party plaintiffs Big Water Resort LLC, Richard Clark, Jimmy Lovell, James Thigpen, Ocoee LLC, and TLC Holdings LLC ("third-party plaintiffs") (ECF No. 179); (2) a motion for summary judgment filed by third-party plaintiffs (ECF No. 183); and (3) a motion for summary judgment filed by third-party defendant M.B. Hutson a/k/a M.B. Hudson ("Hutson") (ECF No. 228). Pursuant to the provisions of

1

Title 28 U.S.C. § 636(b)(1) and Local Rule 73.02(B)(2)(e), the court referred all pretrial matters in this case, involving a pro se litigant, to United States Magistrate Judge Mary Gordon Baker. The magistrate judge conducted a hearing on the aforementioned motions on March 16, 2016 and submitted a report and recommendation ("R&R") to this court recommending that the court deny third-party plaintiffs' motion for sanctions, grant third-party plaintiffs' motion for summary judgment, and deny Hutson's motion for summary judgment. For the reasons set forth below, the court adopts the R&R, denies third-party plaintiffs' motion for sanctions, grants third-party plaintiffs' motion for summary judgment, and denies Hutson's motion for summary judgment.

## I. BACKGROUND

The plaintiffs are members of a putative class of over 1,000 individuals who purchased memberships in defendant Big Water Resort, LLC. Am. Compl. ¶¶ 40, 41. The Big Water Resort, LLC membership agreements ("membership agreements") grant plaintiffs "a right to use all . . . campground facilities and services" at Big Water Resort ("BWR"), a recreational campground and an accommodation located in Clarendon County, South Carolina and owned by TLC Holdings LLC. Id. ¶¶ 14, 79. Third-party plaintiffs Big Water Resort, LLC, TLC Holdings, LLC, Richard Clark ("Clark"), James Thigpen ("Thigpen"), and Jimmy "Steve" Lovell ("Lovell") allegedly had an interest in BWR in various capacities, fully set forth in the court's order on plaintiffs' motion to certify class. Id. ¶¶ 17, 19; see also ECF No. 193. Big Water Resort, LLC sold memberships from BWR's opening in 2003 until the it was transferred to third-party defendant Hutson in December 2010 through a lease-purchase agreement. Am. Compl. ¶¶ 70–72; Hutson Answer and Countercl. ¶ 5.

Plaintiffs make various allegations regarding this transfer. They allege that: (1) Big Water Resort, LLC was insolvent at the time of the transfer; (2) Hutson did not have the financial ability to continue its operations; and (3) there was no long term contract between defendant TLC Holdings, LLC—the owner of the property on which BWR is located—and Big Water Resort, LLC to ensure that members would have continued access to BWR. Am. Compl. ¶¶ 36, 38, 82. Following this transaction, the BWR became a public facility and Big Water Resort, LLC ceased operations. Id. ¶¶ 28, 82.

Plaintiffs, taking issue with this conversion, filed suit in this court on April 22, 2014. The disputes between plaintiffs and third-party defendants have been settled. The court entered an order granting preliminary approval of the class settlement. ECF No. 248. The final fairness hearing, during which the court considered whether to finally approve the class action settlement, was held on May 16, 2016. The issues now before the court involve ancillary disputes between third-party plaintiffs and Hutson.

In December 2011, TLC Holdings, LLC instituted an action against Hutson in the Court of Common Pleas for Clarendon County for "breach of the lease-purchase agreement, seeking damages and ejectment." Third-Party Pls.' Mot. Ex. 4. Hutson filed a third-party complaint against Clark, Lovell, and Thigpen. Id. at Ex. 5. The parties entered into a settlement agreement resolving the dispute on March 30, 2012. In this action, third-party plaintiffs allege that:

> In March 2012, the parties to the lease-purchase agreement entered into a Settlement Agreement. The terms of the Settlement Agreement imposed many duties on [Hutson], including the duty to make certain improvements to the campground property and the duty to make certain payments to [TLC Holdings, LLC]. The Settlement Agreement was approved by consent order in April 2012.

3

Third-Party Defs.' Answer ¶ 138; see also Ex. 6. Judge James approved the Settlement Agreement and incorporated it into a Consent Order in April 2012. Third-Party Pls.' Mot. Ex. 7. Hutson defaulted on the March 2012 Settlement Agreement, and despite third-party plaintiffs notifying him of such default on numerous occasions, he did not cure the default. Third-Party Defs.' Answer ¶¶ 139–40; see also Ex. 9. Third-party plaintiffs filed an affidavit of default in December 2013, and Hutson filed a "motion to set aside the affidavit of default and a motion for a temporary restraining order" in response. Id. ¶ 141; see also Third-Party Pls.' Mot. Exs. 11–13. On March 23, 2013, Judge James declined to set aside the affidavit of default or issue a preliminary injunction and ruled that the March 2012 Settlement Agreement and April 2012 Consent Order should be enforced. Id. ¶ 144; see also Ex. 8. Judge James deemed the lease-purchase agreement terminated and ordered Hutson to vacate the property pursuant to the terms of the settlement agreement. Id. In April 2014, Hutson vacated the property, at which time Clark, Lovell, and Thigpen resumed operation of BWR. Id. ¶ 145.

After plaintiffs filed suit in this court, third-party plaintiffs filed a third-party complaint against Hutson alleging that Hutson failed to operate BWR in a manner beneficial to the members. Defs.' Answer, ECF No. 72, ¶ 133. Third-party plaintiffs allege that in December 2010, they sold their membership interests in Big Water Resort, LLC to Hutson pursuant to a lease-purchase agreement, making Hutson the sole member of the LLC. Id. ¶ 134. According to third-party plaintiffs' complaint, the sale price was $500,000.00, $499,990.00 of which was payable under a promissory note executed by Hutson in favor of Clark, Lovell, and Thigpen. Id.; see also Defs.' Mot. Summ. J., Ex. 2. They further allege that they "entered into a lease-purchase agreement with . . . Hutson,"

4

under which third-party plaintiffs agreed to sell certain property to Hutson, including the land on which BWR was located. Id. ¶ 135; see also Ex. 3. Third-party plaintiffs contend that Hutson defaulted on both the promissory note and the lease-purchase agreement. Id. ¶ 136. Third-party plaintiffs bring a cause of action for equitable indemnity, alleging that Hutson's actions during his control of the BWR exposed them to potential liability. Id. ¶¶ 146–50. Third-party plaintiffs further allege that they "have incurred, and may continue to incur, expenses necessary to protect their interest in defending the claims brought by the members of the [BWR] campground." Id. ¶¶ 147, 150. According to the allegations in the complaint, "an obligation in equity exists on . . . Hutson to indemnify [third-party plaintiffs]." Id. ¶ 148.

Hutson answered the third-party complaint and filed counterclaims against third-party plaintiffs. ECF No. 75. In his pleadings, Hutson explains how BWR came to be open to the public. He alleges that in early 2011, he contacted Clark "asking permission to convert the beautiful recreational building, known as the Clubhouse, into a public restaurant." Hutson Answer ¶ 8. As a result of this conversion, members "would no longer have open, free access to that former recreational building as presented in their membership agreement. The restaurant was to be open to the public and all incoming business was required to pay for their meals." Id.

Hutson alleges that after learning about the property from a real estate agent, he met with Clark and Lovell, who told Hutson that if he purchased three tracts of land, he "would also be required to purchase the rights to approximately 700 existing club memberships." Id. ¶¶ 51–54. Hutson alleges that when he asked Clark and Lovell how much the campground lost and profited, "[t]heir response was that it was not making a

5

profit yet but had much potential." Id. ¶ 55. Hutson further alleges that prior to purchasing the rights to club memberships and the option to purchase the real property, he told third-party plaintiffs that he intended to develop the property for sale to the public. Id. ¶ 56. Hutson alleges that third-party plaintiffs understood his desire to develop the property and never indicated that he would be prohibited from doing so by the terms of the membership agreements or otherwise. Id. Hutson alleges that after he moved onto the property, he discovered that there was only approximately $5,000.00 in the club's existing checking account. Id. ¶ 57. According to Hutson, he soon realized that there was not enough income to properly operate and maintain the campground. Id. Hutson alleges that he had no choice but to let go approximately 90% of the employees, cut back on the telephone lines, change insurance companies, and use part-time employees. Id. ¶ 58. Clark suggested that Hutson raise the membership fees drastically, which would encourage members to drop their memberships and allow Hutson to seek business from the general public. Id. ¶¶ 60–65. Thereafter, Hutson raised member fees, and members began to drop their memberships and threatened to file a class-action lawsuit. Id. ¶ 66.

Hutson alleges that prior to his involvement with BWR, third-party plaintiffs allowed the public to access the campground. Id. ¶ 70. Hutson alleges that he eventually realized that third-party plaintiffs intended to use him as a scapegoat after collecting millions of dollars from lifetime club members. Id. ¶ 71. Hutson claims that third-party plaintiffs intentionally misled him and failed to disclose pertinent information, putting him in an impossible situation that prevented him from developing the property. Id. ¶ 72. Hutson alleges that third-party plaintiffs failed to disclose the exclusive nature of the

memberships, BWR's yearly losses of $250,000.00, the lack of sufficient reserves or income for proper maintenance of the resort club, the fact that local authorities imposed a sewer moratorium on the property, and the fact that BWR was subject to large charges by the utility company. Id. ¶ 73. Hutson claims that third-party plaintiffs' actions caused him to become financially destitute and forced him to file for bankruptcy. Id. ¶ 76. Hutson also alleges that third-party plaintiffs defamed him and caused him duress and mental anguish. Id. ¶ 76–77. Hutson brings the following counterclaims: (1) breach of contract; (2) breach of contract accompanied by fraud; (3) fraud and fraud in the inducement; (4) negligent misrepresentation; (5) constructive fraud; (6) breach of the covenant of good faith and fair dealing; (7) negligence, recklessness, willfulness, and wantonness; and (8) defamation.

On September 3, 2015, third-party plaintiffs filed a motion for sanctions against Hutson. On September 9, 2015, third-party plaintiffs filed a motion for summary judgment. Hutson filed a response in opposition to the motion for sanctions on September 11, 2015, and an amended response that same day. On September 14, 2015, Hutson filed another response in opposition to the motion for sanctions and a response in opposition to the motion for summary judgment. Hutson filed an additional response to both motions on September 29, 2015. Third-party plaintiffs replied on October 8, 2015, and Hutson filed a sur-reply on October 13, 2015. Hutson filed a motion for summary judgment on third-party plaintiffs' equitable indemnity claim on January 6, 2016. Third-party plaintiffs filed a response in opposition on January 25, 2016, and Hutson replied on February 5, 2016. Hutson filed a second reply on February 10, 2016. The magistrate judge held a hearing on all pending motions on March 16, 2015. On April 5, 2016, the

magistrate judge issued an R&R, recommending that the court deny third-party plaintiffs' motion for sanctions, grant third-party plaintiffs' motion for summary judgment, and deny Hutson's motion for summary judgment. Hutson and his counsel—representing him on the equitable indemnity claim only—filed objections to the R&R. Third-party plaintiffs did not file objections to the R&R, but they filed a reply to Hutson's objections on May 9, 2016. The motions have been fully briefed and are ripe for the court's review.[1]

## II.  STANDARD

This court is charged with conducting a de novo review of any portion of the magistrate judge's report to which specific, written objections are made, and may accept, reject, or modify, in whole or in part, the recommendations contained in that report. 28 U.S.C. § 636(b)(1). The magistrate judge's recommendation does not carry presumptive weight, and it is the responsibility of this court to make a final determination. Mathews v. Weber, 423 U.S. 261, 270–71 (1976). A party's failure to object may be treated as agreement with the conclusions of the magistrate judge. See Thomas v. Arn, 474 U.S. 140, 150 (1985).

Summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of some

---

[1] Hutson did not object to the magistrate judge's recommendation that the court grant third-party plaintiffs' motion as it pertains to the defamation claim. Further, third-party plaintiffs did not file objections. After reviewing the record de novo, the court adopts the R&R as it pertains to third-party plaintiffs' motion for sanctions and motion for summary judgment as to Hutson's defamation claim. Accordingly, the court denies the motion for sanctions and dismisses Hutson's defamation claim.

alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. When the party moving for summary judgment does not bear the ultimate burden of persuasion at trial, it may discharge its burden by demonstrating to the court that there is an absence of evidence to support the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The non-movant must then "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322. The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. Anderson, 477 U.S. at 255.

### III.   DISCUSSION

#### A.     Third-Party Plaintiffs' Motion for Summary Judgment

Third-party plaintiffs argue that the court should grant their motion for summary judgment because Hutson's counterclaims are barred by the doctrine of res judicata in light of the Settlement Agreement incorporated into Judge James's 2012 Consent Order

9

in the state court action. Third-Party Pls.' Mot. 7. The R&R recommends that the court grant third-party plaintiffs' motion and hold that Hutson's claims for breach of contract, breach of contract accompanied by fraud, fraud and fraud in the inducement, negligent misrepresentation, constructive fraud, breach of the covenant of good faith and fair dealing, and negligence, recklessness, willfulness, and wantonness are barred by the release Hutson executed in settling the state court action. R&R 14–15. Hutson objects to the magistrate judge's recommendation, arguing that an exception to the doctrine of res judicata applies because the release was procured by fraud. Third-Party Def.'s Obj. 17–20.

"'The doctrine of res adjudicata (or res judicata) in the strict sense of that time-honored Latin phrase had its origin in the principle that it is in the public interest that there should be an end of litigation and that no one should be twice sued for the same cause of action.'" S.C. Dep't of Soc. Servs. v. Basnight, 551 S.E.2d 274, 278 (S.C. Ct. App. 2001) (quoting First Nat'l Bank of Greenville v. U.S. Fid. & Guar. Co., 35 S.E.2d 47, 56 (S.C. 1945)). Res judicata, or claim preclusion, bars litigation of claims that were litigated or could have been litigated in an earlier suit. Nevada v. United States, 463 U.S. 110, 130 (1983); Hilton Head Ctr. of S.C., Inc. v. Pub. Serv. Comm'n of S.C., 362 S.E.2d 176, 177 (S.C. 1987). To determine the preclusive effect of a state court judgment, federal courts look to state law. Allen v. McCurry, 449 U.S. 90, 95–96 (1980); Laurel Sand & Gravel, Inc. v. Wilson, 519 F.3d 156, 161–62 (4th Cir. 2008). In South Carolina, res judicata requires proof of three elements: (1) "a final, valid judgment was entered on the merits of the first suit"; (2) "the parties to both suits are the same"; and (3) "the

subsequent action involves matters properly included in the first action." Judy v. Judy, 677 S.E.2d 213, 217 (S.C. Ct. App. 2009).

As stated above, in December 2011, third-party plaintiffs instituted an action against Hutson in the Court of Common Pleas for Clarendon County for "breach of the lease-purchase agreement, seeking damages and ejectment." Third-Party Pls.' Mot. Ex. 4; TLC Holdings, LLC v. M.B. Hudson, a/k/a M.B. Hutson, Civ. A. 2011-co-14-602 (hereafter "state court case"). Hutson filed counterclaims against TLC Holdings, LLC and a third-party complaint against Clark, Lovell, and Thigpen. Third-Party Pls.' Mot. Ex. 5, Hutson Answer. Hutson alleged that third-party plaintiffs "knew that defects existed in regard to the premises," including that a moratorium was imposed on the property for sewer installation and of the large utility bills. Id. Ex. 5 at 7, 14. Hutson further alleged that third-party plaintiffs "made misrepresentations to [Hutson] or otherwise concealed relevant and material statements of facts regarding the condition, usefulness, and ability to develop the property." Id. at 12. According to Hutson's third-party complaint, third-party plaintiffs interfered with his development of the property by notifying Clarendon County of the pending litigation in an attempt to hinder and delay Hutson's performance under the lease-purchase agreement. Id. ¶ 85. Hutson further alleged that he should be given an equitable interest in the property because of the improvements made thereon. Id.

On March 30, 2012, Hutson and TLC Holdings, LLC signed a settlement agreement ("Settlement Agreement") resolving the dispute. Third-Party Pls.' Mot. Ex. 6. Although the other third-party plaintiffs did not sign the Settlement Agreement, its provisions provide:

11

> This Settlement Agreement shall be incorporated into a Consent Order (the "Consent Order") entered in the above-referenced case (the "Litigation"). Although Richard U. Clark, Jimmy S. Lovell and James C. Thigpen are parties to this Settlement Agreement by virtue of being parties to the [Lease Purchase] Agreement, and are named as Third Party Defendants in the Litigation, they have not been served with the pleadings in the Litigation and shall not be deemed to have appeared in the Litigation by their execution of this Settlement Agreement. This Settlement Agreement shall be binding upon all of the undersigned parties even though Richard U. Clark, Jimmy S. Lovell and James C. Thigpen have not appeared in the Litigation and are not parties to the Consent Order.

Id. The Settlement Agreement further provides:

> Pursuant to the Consent Order, in the event that Mr. Hudson fails to comply with the terms of the Settlement Agreement, unless such failure is a direct and proximate result of TLC's failure to perform an action expressly required of it in this Settlement Agreement, time being of the essence, then the Plaintiff is entitled to the following immediate relief, without further notice of the court or notice to Defendant or his attorney: (a) termination of the [Lease Purchase] Agreement, (b) cancelation [sic] of the lis pendens filed by Hudson in this action, (c) immediate vacation of the Property by Mr. Hudson except for his personal residence, which shall be vacated within 15 days, enforceable by the Clarendon County Sheriff; and (d) <u>the provisions of Section 23 shall be effective</u>. Prior to any such default by Hudson hereunder, the parties acknowledge that the Lease remains in full force and effect in accordance with its terms, as modified by this Settlement Agreement, and during the Primary Term (as may be extended as provided herein), Hutson shall have full possession of the Property in accordance with, and subject to, the terms of the Lease as modified by this Settlement Agreement.

Id. at 2 (emphasis added).

Section 23 of the Settlement Agreement, titled "Release," provides as follows:

> As a material consideration of this Settlement Agreement, in the event of the termination of the [Lease Purchase] Agreement pursuant to Section 4 above as a result of Hudson['s] breach hereof, then automatically and without further action of the parties, as of the date of such termination (the "Termination Date"), Hudson shall be deemed to have released, forever discharged and promised never to sue TLC, Richard U. Clark, Jimmy S. Lovell, and James C. Thigpen, and their respective agents, attorneys, insurance companies, parent companies, subsidiaries, affiliates, predecessors, successors, or assigns (together, the "TLC Parties"), <u>from</u>

12

> any and all injuries, personal or property, known or unknown, causes of action, demands, warranty claims, damages, suits at law or in equity, of whatsoever kind and nature, or because of any matter or thing done, omitted or suffered to be done, by the TLC Parties, prior to and including the Termination Date, on account of all injuries and damages, including attorneys' fees and litigation expenses, arising from the Lease or the relationship between Hudson, on the one hand, and TLC, Richard U. Clark, Jimmy S. Lovell, and James C. Thigpen, on the other hand, and any causes of action, known or unknown, relating to the Lease, including any and all claims alleged, or which could have been alleged, in the Litigation.

Id. at 6–7 (emphasis added).

Judge James entered a Consent Order on April 12, 2012 approving the Settlement Agreement and incorporating it into the Consent Order by reference. Third-Party Pls.' Mot. Ex. 7. By December 31, 2012, Hutson was in default of the provisions of the Settlement Agreement. Id. at Ex. 8, 4. After sending numerous default letters to Hutson, TLC Holdings, LLC filed an affidavit of default, signed by Clark. Id. at Ex. 11. In response, Hutson filed a motion to set aside the affidavit of default and a motion for a restraining order against TLC Holdings, LLC. Id. at Exs. 12, 13. Judge James held a hearing on these motions on January 8, 2014.

On March 20, 2014, Judge James entered an order in which he found that Hutson had breached several provisions of the Settlement Agreement. Id. at Ex. 8, at 6. Judge James's order further stated that pursuant to the express terms of the Consent Order, Hutson defaulted as of the filing date of the affidavit of default on December 11, 2013, resulting in a termination of the lease-purchase agreement and his immediate vacation of the property, except his personal residence thereon, which he was required to vacate within fifteen days. Id. at 9. In light of Hutson's default and the terms of the Settlement Agreement, Judge James's order deemed Hutson to have granted "the TLC Release to the

TLC Parties, as set forth more fully in Section 23 of the Settlement Agreement." Id. at 11–12.

Judge James's order is plainly a final judgment on the merits of the state court case. Further, it is clear that Hutson's counterclaims for breach of contract, breach of contract accompanied by fraud, fraud and fraud in the inducement, negligent misrepresentation, constructive fraud, breach of the covenant of good faith and fair dealing, and negligence, recklessness, willfulness, and wantonness fall within the broad, express language of the Settlement Agreement and its Release provision. The state court action involved the same parties currently before the court, although not named in the caption, and the Settlement Agreement was binding on all of the parties. Lastly, the state court action involves matters that are now before the court that were, or could have been, brought by Hutson.

Hutson's objections, construed broadly, do not appear to object to the magistrate judge's finding that the Settlement Agreement and the Release, incorporated into the state court order, encompass his present counterclaims against third-party plaintiffs. Nor does Hutson object to the magistrate judge's finding that the principles of res judicata apply. Rather, Hutson argues that the Release is unenforceable. Specifically, Hutson argues that he could not have pursued a claim for fraud in the state court action because he did not have knowledge upon which to raise the claim until after he signed the Settlement Agreement. Third-Party Def.'s Obj. 20–21. Hutson specifically points to Lovell's deposition and meeting minutes from a January 2009 meeting to support his claims that he did not have knowledge of the alleged fraudulent conduct. Id. Hutson additionally

argues that the Release and Settlement Agreement should be set aside for public policy reasons.  Id. at 21–30.

Although Hutson contends that the alleged fraud was ongoing, he does not point to any alleged fraudulent conduct that took place after December 11, 2013.[2]  There is no dispute that Hutson knew about the "life time" membership agreements when he purchased BWR.  See Third-Party Def.'s Obj. 20; see also Third-Party Pls.' Reply, Ex. 3 (email from Hutson's real estate agent expressing his concerns about the effect of the life time membership agreements).[3]  The Release clearly releases all claims against third-party plaintiffs that arose on or prior to December 11, 2013, the date on which third-party plaintiffs filed the Affidavit of Default.

Further, all of Hutson's claims of fraud relate to the original transaction and not the procurement of the Release.  Hutson was represented by an attorney in the underlying state court action and was therefore presumably advised of the application and effect of

---

[2] Section 23 of the Settlement Agreement provides that in the event of Hutson's default, as of the date of the termination of the lease-purchase agreement, "Hutson shall be deemed to have released, forever discharged, and promised never to sue" third-party plaintiffs.  Third-Party Pls.' Mot. Ex. 6, at 7.  Judge James's order provided that, effective upon the filing of the Affidavit of Default on December 11, 2013, third-party plaintiffs remained entitled to the relief set forth in the Settlement Agreement.  See Judge James's Order, Third-Party Pls.' Mot. Ex. 8, at 9; see also Consent Order, Ex. 7, at 2–3.  The order also states that Hutson is deemed to have granted the Release as set forth in the Settlement Agreement.  Id. at 10.  Therefore, the court uses the date of the filing of the Affidavit of Default as the date of termination to trigger the Release provision.

[3] The R&R extensively outlines Hutson's allegations as set forth in his many filings with this court.  See R&R 22–25.  The R&R also provides the lengthy basis of Hutson's knowledge of the underlying allegations of fraud prior to signing the Release, as set forth in his own filings and representations made to the court during various hearings.  Id.  The court has reviewed the magistrate judge's representations of the allegations and Hutson's respective knowledge thereof and finds no error.  Because the R&R provides a comprehensive outline of Hutson's allegations and his knowledge of the alleged fraud, the court does not find it necessary to regurgitate that information in this order and will refer the parties to the R&R for further discussion thereof.

the Release.  See House v. Aiken Cty. Nat. Bank, 956 F. Supp. 1284, 1291 (D.S.C.) ("[T]hey have failed to produce an affidavit or statement from the attorney who represented them in the former litigation, any documents to show they were not fully informed or advised as to the content of the settlement of that previous litigation, or any other evidence sufficient to raise a genuine factual dispute as to this issue.  Plaintiff's conclusory allegations, without more, are insufficient to provide evidence of fraud or to defeat a properly supported motion for summary judgment.").  Hutson has failed to provide any evidence whatsoever of fraud in the procurement of the Release.  Therefore, there is no basis to set aside the Release.  See House, 956 F. Supp. at 1292 ("Plaintiffs have failed to provide any evidence, other than their own conclusory allegations, that they were induced to enter into this release because of fraud or misrepresentation.").

Hutson also makes various public policy arguments for his assertion that the Release should be set aside, including that public policy disfavors releases procured by fraudulent conduct, there was a disparity in bargaining power, and there was no meeting of the minds between the parties.  Third-Party Def.'s Obj. 21–28.  Again, all of Hutson's allegations of fraud relate to the original transaction and not the procurement of the Release.  Further, as stated above, Hutson was represented by counsel in the state court action.  The Settlement Agreement and Release were reviewed by an impartial judge and incorporated into his order.  There is absolutely no indication that Hutson held an unfair bargaining position.  Further, although Hutson continues to argue that he did not have sufficient knowledge to form a binding contract, all of the evidence on the record points to the contrary.  Hutson made the same allegations of third-party plaintiffs' fraudulent misrepresentations in the state court action that were thereafter released by the Settlement

16

Agreement.  See Third-Party Pls.' Mot. Ex. 8 at 2.  Therefore, Hutson's public policy arguments also fail.

Thus, the court grants third-party plaintiffs' motion for summary judgment as to Hutson's claims for breach of contract, breach of contract accompanied by fraud, fraud and fraud in the inducement, negligent misrepresentation, constructive fraud, breach of the covenant of good faith and fair dealing, and negligence, recklessness, willfulness, and wantonness.[4]

### B. Third-Party Defendant's Motion for Summary Judgment

Hutson seeks summary judgment as to third-party plaintiffs' equitable indemnity claim.  ECF No. 228.  The magistrate judge recommends that the court deny Hutson's motion for summary judgment because the third-party plaintiffs' alleged failure to record the membership agreements did not cause the damage of which plaintiffs complain.  R&R 30–35.  Hutson objects to the magistrate judge's recommendation, arguing that the magistrate judge defines plaintiffs' damages too narrowly.[5]  Third-Party Def.'s Obj. 7.

---

[4] The magistrate judge did not find that the Settlement Agreement and Release applied to Hutson's defamation claim because his allegations of defamation occurred after December 11, 2013.  R&R 27.  However, the R&R recommends that the court grant third-party plaintiffs' motion for summary judgment as to Hutson's defamation claim because "the undisputed evidence reveals that the statements of which Hutson complains were, in fact, true . . . ."  R&R 30.  In his objections, Hutson states that he "would not object to a dismissal without prejudice on the defamation claim as he will pursue it in state court."  Third-Party Def.'s Obj. 30.  After reviewing the R&R de novo, the court agrees with the magistrate judge that third-party plaintiffs are entitled to summary judgment as to Hutson's defamation claim because the alleged defamatory statements are true.  Therefore, the court also grants third-party plaintiffs' motion for summary judgment as to Hutson's defamation claim.

[5] Hutson has an attorney who represents him only on the equitable indemnification claim.  His attorney submitted objections on his behalf that relate only to the magistrate judge's recommendation as to the equitable indemnity claim.  However, Hutson's objections to the magistrate judge's other recommendations were filed pro se.

"The law of equitable indemnification allows recovery of expenses when the act of the wrongdoer involves the innocent defendant in litigation or places him in such relation with others as makes it necessary to incur expenses to protect his interest." Vermeer Carolina's, Inc. v. Wood/Chuck Chipper Corp., 518 S.E.2d 301, 305 (S.C. Ct. App. 1999). Third-party plaintiffs must prove the following three things to recover against Hutson for equitable indemnification: (1) Hutson was liable for causing plaintiffs' damages; (2) third-party plaintiffs were exonerated from any liability for those damages; and (3) third-party plaintiffs suffered damages as a result of the plaintiffs' claims against it which were eventually proven to be Hutson's fault. Id. at 307.

Hutson argues that third-party plaintiffs' "failure to record the membership agreements and the alleged lease between TLC and BWR is negligence per se which is fault and, as a matter of law, TLC cannot prevail on its claim for equitable indemnity." Third-Party Def.'s Obj. 6. Hutson argues that the plaintiffs' damages all arise out of third-party plaintiffs' failure to record the membership agreements. However, not all of plaintiffs' alleged damages relate to third-party plaintiffs' failure to record the membership agreements. Most notably, plaintiffs allege that the public was allowed to access BWR in violation of the membership agreements. There is evidence on the record the BWR was opened to the public prior to Hutson's involvement. See Youmans Dep. 14:11–15:11, ECF No. 91, Ex. 9. On the other hand, there is also evidence that Hutson opened the resort to the public. See Mot. to Certify Class, Ex. 23 Hutson letter to members; see also Hutson Dep. 320:18–32:25, ECF No. 126 ("QUESTION: And about six months later, sometime in 2012, because of the financial condition that – that you inherited this – this club in, you opened it up to the general public as an at-large; isn't that

18

right?  ANSWER: We always took the members.  But we would take every person that we could coming in from the public.  We didn't have no [sic] choice.").

Third-party plaintiffs cannot recover for equitable indemnity if they had any fault in causing plaintiffs' damages.  See Walterboro Cmty. Hosp. v. Meacher, 709 S.E.2d 71, 74 (S.C. Ct. App. 2011) ("The most important requirement for . . . equitable indemnity is that the party seeking to be indemnified is adjudged without fault and the indemnifying party is the one at fault." (citation omitted)); Vermeer, 518 S.E.2d at 307 ("[T]here can be no [equitable] indemnity among mere joint tortfeasors.").  The court cannot say as a matter of law who is at fault, and there is evidence in the record—when viewed in the light most favorable to the third-party plaintiffs as the nonmoving parties—from which a jury could determine that Hutson caused the plaintiffs' damages.  There is a genuine issue of material fact as to who opened BWR to the public, thereby causing plaintiffs' alleged damages.  The court agrees with the magistrate judge that this dispute cannot be resolved at the summary judgment stage.  Because there is conflicting evidence of who is at fault in causing plaintiffs' damage, Hutson's motion for summary judgment is denied.  See Stoneledge at Lake Keowee Owners' Ass'n, Inc. v. Clear View Const., LLC, 776 S.E.2d 426, 432 (S.C. Ct. App. 2015) ("[W]e find the evidence is conflicting, and viewing the evidence in the light most favorable to [the nonmoving party], the record contains evidence a factfinder could reasonably find supports the conclusion [the nonmoving party] was not at fault.  Because of this conflicting evidence, the equitable indemnity cause of action must be remanded for a trial.").

## IV. CONCLUSION

For the foregoing reasons, the court **ADOPTS** the R&R, **DENIES** third-party plaintiffs' motion for sanctions, **GRANTS** third-party plaintiffs' motion for summary judgment, and **DENIES** third-party defendant's motion for summary judgment.

**AND IT IS SO ORDERED**.

                                        **DAVID C. NORTON**
                                        **UNITED STATES DISTRICT JUDGE**

**May 20, 2016**
**Charleston, South Carolina**